IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 00-31327

———————————

JAMES CABONI; ET AL

Plaintiffs

JAMES CABONI

Plaintiff-Appellant

Versus

GENERAL MOTORS CORPORATION; ET AL

Defendants

GENERAL MOTORS CORPORATION

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

January 2, 2002
Before GARWOOD and WIENER, Circuit Judges, and FALLON,* District Judge.

———————————

*District Judge of the Eastern District of Louisiana, sitting by designation.

-1-

FALLON, District Judge:

Plaintiff-Appellant James Caboni appeals the district court's grant of summary judgment in favor of Defendant-Appellee General Motors Corporation on Plaintiff Appellant's products liability action brought pursuant to the Louisiana Products Liability Act ("LPLA"). For the following reasons, we REVERSE and REMAND the case for further consideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 1998, Plaintiff-Appellant James Caboni was driving his 1996 Chevrolet S-10 pickup truck along Interstate 310 in Saint Charles Parish, Louisiana, when an unidentified vehicle swerved into his lane. Caboni claims that to avoid a collision, he was forced to take evasive action. Such action caused Caboni to lose control of his truck, and the truck slammed into the Interstate's guardrail.[1] The driver's side air bag in Carboni's truck did not deploy upon impact.

Caboni's truck and its air bag system were manufactured by Defendant-Appellant General Motors Corporation ("GM"). Because the truck's air bag did not deploy when Caboni's truck hit the guardrail, Caboni sued GM in state court under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. Ann. §§ 9:2800.51-9:2800.60, claiming damages for physical injuries, including injuries to his head caused by his head hitting the steering wheel. Specific to this appeal, Caboni alleged that GM's air bag was unreasonably dangerous because it did not conform to an express warranty contained within the truck's owner's manual. See La. Rev. Stat. Ann. §

---

[1]It is undisputed that Caboni was wearing his seatbelt at the time of the crash.

9:2800.58.[2]

On September 23, 1999, GM removed the case to federal court on the basis of diversity. GM then filed a motion for summary judgment contending that Caboni could not establish the essential elements required for an express warranty claim under the LPLA. The district court agreed and granted GM's motion. Caboni then filed a motion for reconsideration, which the district court denied.

Caboni timely appealed.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same criteria employed by the district court in the first instance. *See Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). "Summary judgment is proper only 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 482 (5th Cir. 2000)

---

[2]On August 29, 1999 both Caboni and his wife brought suit against GM–Caboni for his injuries and his wife for loss of consortium and mental anguish. In addition to the claim that the truck's air bag system was unreasonably dangerous because it failed to conform to an express warranty, Caboni also alleged that the air bag system was unreasonably dangerous in design, unreasonably dangerous because of inadequate warning, and unreasonably dangerous in construction and composition. *See* §§ 9:2800.55, 9:2800.56, and 9:2800.57. Moreover, Caboni and his wife sued Midland Risk Insurance Company ("Midland") for uninsured motorist coverage. On June 8, 2000, Caboni's wife voluntarily dismissed her claims against GM and Midland. Now, on appeal, Caboni raises only the express warranty claim.

Regarding the Midland suit, the district court refused to grant Midland's motion for summary judgment, and therefore, Caboni's claims against Midland are still pending. However, because of GM's dismissal, the district court concluded that federal jurisdiction was destroyed and remanded the case to state court.

(quoting Fed. R. Civ. P. 56(c)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). In making this assessment, this court will not weigh the evidence or evaluate the credibility of witnesses. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986)).

"Courts of Appeals consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *See Spivey v. Robertson*, 197 F.3d 772, 774-75 (5th Cir. 1999) (citing *Anderson*, 477 U.S., at 248-49), *cert. denied*, 120 S. Ct. 2659 (2000); *see also Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 383 (5th Cir. 2000) ("If the movant succeeds in making that showing, the nonmoving party must set forth specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings."), *cert. denied*, 121 S. Ct. 766 (2001). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *See* Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322.

### III. EXPRESS WARRANTY CLAIMS UNDER THE LPLA

#### A. Statutory Framework

In this diversity action, the LPLA applies to Caboni's claims. The LPLA sets forth "exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. Ann. § 9:2800.52; *see also Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995). Further, the LPLA imposes liability on a manufacturer only "for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when

-4-

such damage arose from a reasonably anticipated use of the product." La. Rev. Stat. Ann. §

9:2800.54(A). As provided by the LPLA, a product may be unreasonably dangerous in one of

four ways: (1) construction or composition, (2) design, (3) inadequate warning, and (4)

nonconformity to an express warranty. *See id*. § 9:2800.54(B).

Relevant to this case is the LPLA provision that provides for a claim against a

manufacturer for damages arising from a product that is unreasonably dangerous because of its

nonconformity to an express warranty made by the manufacturer. Section 9:2800.58 of the LPLA

provides:

> A product is unreasonably dangerous when it does not conform to an express
> warranty made at any time by the manufacturer about the product if the express
> warranty has induced the claimant or another person or entity to use the product
> and the claimant's damage was proximately caused because the express warranty
> was untrue.

Accordingly, to survive summary judgment, a plaintiff is required to demonstrate, or provide

evidence to create a genuine issue of material fact regarding the following: (1) the manufacturer

made an express warranty regarding the product, (2) the plaintiff was induced to use the product

because of that warranty, (3) the product failed to conform to that express warranty, and (4) the

plaintiff's damage was proximately caused because the express warranty was untrue. *See id*.

B.  Analysis of Express Warranty Claim Within the Statutory Framework

1.  Existence of an Express Warranty

We turn to the first element of a LPLA express warranty claim–the existence of an express

warranty. The LPLA defines an "express warranty" as

> a representation, statement of alleged fact or promise about a product or its nature,
> material or workmanship that represents, affirms or promises that the product or
> its nature, material or workmanship possesses specified characteristics or qualities

or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty.

La. Rev. Stat. Ann. § 9:2800.53(6). Caboni points to one excerpt from the truck's owner's manual, arguing that it constitutes an express warranty under the LPLA. That passage provides:

When should an air bag inflate?

The air bag is designed to inflate in moderate to severe frontal or near-frontal crashes. The air bag will inflate only if the impact speed is above the system's designed "threshold level"." If your vehicle goes straight into a wall that doesn't move or deform, the threshold level is about 14 to 18 mph (23 to 29 km/h). The threshold level can vary, however, with specific vehicle design, so that it can be somewhat above or below this range.

1996 S-Series Pickup Owner's Manual, p. 1-20, R.581.[3]

The district court disagreed with Caboni's characterization of this excerpt as an express warranty, stating simply that "as a matter of law[,] the statements made in the owner's manual do not constitute an 'express warranty' as defined by the Act." The district court did not provide any analysis in support of its conclusion that the statements were not express warranties, and our research has failed to uncover any Louisiana cases that have analyzed the exact contours of an express warranty under the LPLA. However, under a clear reading of the statute, we conclude that a reasonable jury could find that when GM stated in its manual that "[t]he air bag is designed to inflate in moderate to severe frontal or near-frontal crashes," it created an express warranty. *See* La. Rev. Stat. Ann. § 9:2800.53(6). A reasonable jury could find that the passage is a "representation" or "statement of alleged fact" about the air bag system that "represents" or "affirms" that the air bag will meet a "specified level of performance," i.e., inflate in moderate to

---

[3]The district court also considered another excerpt from pages 1-18 through 1-19 of the owner's manual. Caboni does not argue this passage on appeal.

severe frontal or near-frontal crashes. *See id*. Likewise, a reasonable factfinder could determine that the statement is neither a "general opinion" nor "general praise" about the air bag system. *See id*. Citing no case law, GM argues that the statement is "general *opinion*" or "general *praise."* (emphasis added). Because we believe that a reasonable jury could find that the statement at issue satisfies the LPLA's definition of an express warranty, we conclude that the district court erred in granting summary judgment on this issue.

The district court granted GM's motion for summary judgment on the alternative grounds that Caboni did "not provide[] adequate evidence to show that the express warranty was untrue and further that [Caboni]'s reliance upon those statements was the proximate cause of his injuries." The district court stated that Caboni presented only his affidavit, excerpts from the owner's manual, a copy of the police report, and photographs of the damaged truck as evidence. The court pointed out that GM, on the other hand, presented the testimony of Caboni's expert A.J. McPhate, "whose expert opinion establishe[d] that the statements made in the owner's manual were accurate and that the angle of the collision would not cause the air bags to be deployed."[4] Furthermore, the district court concluded that no medical evidence was presented "to relate [Caboni]'s head injuries to the reliance placed on the statements made in the manual." We will address these conclusions within our analysis of whether Caboni satisfied the remaining three factors of the LPLA's four-factor test for whether a product is unreasonably dangerousness

---

[4]McPhate testified in his deposition that the truck's air bag system was not defective and that it functioned properly in *not* deploying because the point of impact to the truck was outside the generally accepted thirty degree angle (or sixty-degree cone) for deployment. As a result of this deposition testimony, on September 4, 2000, Caboni filed a motion in limine, explaining that he dropped both his unreasonably dangerous in design and unreasonably dangerous in construction claims. *See supra* note 2.

because of its nonconformity to an express warranty.

## 2. Inducement to Use the Product

Turning to the second factor of the test, we conclude that Caboni has created a genuine issue of material fact regarding whether he was induced by the express warranty to use the truck. *See* La. Rev. Stat. Ann. § 9:2800.58. Caboni has presented undisputed testimony in the form of an affidavit to the effect that "[t]he language in [the] GM owner's manual regarding air bag deployment, including that 'the air bag is designed to inflate in moderate to severe frontal or near-frontal crashes,' induced [him] to use the vehicle." It is not our province to judge whether this statement is, in fact, true. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1988). Instead, we conclude that Caboni has gone beyond his pleadings and has established a genuine issue of material fact with respect to this factor.

## 3. Failure of Product to Conform to the Express Warranty

Next, we must address whether Caboni has presented sufficient evidence to create a genuine issue of material fact as to the third factor of the test, i.e., whether the product failed to conform to the express warranty. *See* La. Rev. Stat. Ann. § 9:2800.58. The district court appears to have phrased this inquiry as whether Caboni presented evidence that the express warranty was "untrue" and emphasized the fact that Caboni's expert McPhate testified in his deposition that the air bag system functioned properly in not deploying in this specific collision. The court appears to have concluded that because the air bag system functioned as designated,[5] it conformed to the express warranty contained within the owner's manual. Caboni asserts that this is the wrong inquiry and that the district court should have confined its examination to the specific

---

[5]*See supra* note 4.

representations made in the owner's manual and should not have based its opinion on an expert's view of the proper functioning of the vehicle. We agree.

McPhate's deposition testimony cited by the district court dealt only with whether the air bag system performed as designated and with whether the air bag was defective. These are separate inquiries from whether the air bag system was unreasonably dangerous because it failed to conform to the express warranty in the owner's manual. The district court should have focused on whether the air bag's performance matched that described by the language of the *warranty*, rather than whether the air bag performed as it was *designed* to perform.[6] But this does not resolve the issue.

The question remains whether Caboni adduced sufficient evidence to demonstrate a genuine issue regarding whether the air bag system conformed to the express warranty. Caboni satisfies this summary judgment standard by the testimony of his expert. In McPhate's deposition, the following discourse took place:

Q. Right. Now, how would you characterize this crash? Was it a frontal, a near frontal, side, rear; how are you characterizing this crash?

A. Well, *it is a frontal crash*. He was moving forward. I mean he wasn't sliding sideways, but the–and *so it is a frontal crash*, but it is restricted to one side . . . so basically, if you want to call it–*it is a frontal collision*, but on the object struck it is, if you will, a glancing blow.

Q. At the point of first–of initial impact–

A. Yes.

Q. –with the Jersey barrier, can you characterize how many miles per hour he was

---

[6]For example, if a similarly designed air bag was accompanied by an express warranty that promised complete protection from all accidents no matter the speed or impact, it would be immaterial to the express warranty question that the air bag functioned as designed.

going at that time?

A.  Laterally I expect he was going about–*15 at maximum or 20 miles per hour laterally, going about 65 to 70 longitudinally* or down the highway . . ..
. . .

Q.  So this frontal or near frontal collision, would you consider it a severe or moderate to severe collision?

A.  Well, it is relatively–it is moderate, *moderate to severe.*
(Emphasis added.)

This testimony is sufficient to create a genuine issue of material fact regarding whether the air bag system failed to conform to the express warranty that "[t]he air bag is designed to inflate in moderate to severe frontal or near-frontal crashes."  As demonstrated above, McPhate testified that the collision was "frontal" and that it was "moderate to severe."  Moreover, although it is not clear whether the "threshold level" in the owner's manual (14 to 19 mph) indicates lateral or longitudinal speed, we recognize that either speed indicated by McPhate (15 to 20 mph laterally or 65 to 75 mph longitudinally) fits within the requisite threshold.  Accordingly, we conclude that the district court erred in holding that Caboni failed to present sufficient evidence to survive summary judgment as to this factor.

### 4.  Proximate Causation

Finally, we consider whether Caboni advanced sufficient evidence to create a genuine issue of material fact regarding whether his damages were "proximately caused because the express warranty was untrue."  La. Rev. Stat. Ann. § 9:2800.58.  The district court appears to have defined the proximate causation standard in this case as whether Caboni's "reliance upon th[e statements in the manual] was the proximate cause of his injuries."  We believe this to be an incorrect standard.  As mandated by the LPLA, the standard is, instead, whether Caboni's

-10-

"damage was proximately caused *because the express warranty was untrue*." *Id*. (emphasis added).

As we explained in the immediately preceding section, Caboni has raised a genuine issue of material fact as to whether the express warranty in the manual was untrue. He demonstrated through McPhate's testimony that the collision was, in fact, frontal or near frontal and moderate to severe and that the air bag failed to deploy upon impact. The question now is whether the fact that the express warranty may have been untrue proximately caused Caboni's head injuries. GM argues that, in order to prevail, Caboni must establish that he sustained more severe injuries than he would have received if the air bag had deployed. We agree that this is the proper legal question under Louisiana law. *See Armstrong v. Lorino*, 580 So.2d 528, 530 (La. App. 4 Cir.), *writ denied*, 605 So.2d 1146 (La. 1992). Accordingly, we must determine whether Caboni adduced sufficient evidence to create a genuine issue of material fact regarding whether the fact that the express warranty was untrue (i.e., that it did not deploy in a frontal or near frontal, moderate to severe crash) proximately caused his additional injuries (i.e., his alleged head injuries). Caboni has advanced the following evidence: (1) GM's expert, Dr. Tawfik Khalil, stated in his report that Caboni's "'forehead redness' noted by the EMS personnel likely resulted from grazing the steering wheel upper rim as his unrestrained head/neck flexed forward and to the left"; (2) McPhate testified that deployment of the air bag "would probably have prevented his head from hitting the steering wheel"; and (3) Caboni's second expert witness, Dr. Roberta Bell, stated in an affidavit that, in her opinion, "had the air bag in Mr. Caboni's vehicle deployed in this accident, his closed head or brain injury, more probably than not, would not have occurred or would not have been as severe." We believe that a reasonable jury could find that Caboni's

-11-

injuries were more severe because the air bag system was unreasonably dangerous as defined under the LPLA. *See* La. Rev. Stat. Ann. § 9:2800.58. Recognizing that causation is generally a question of fact, *see Coleman v. Deno*, 99-2998 (La. App. 4 Cir. 4/25/01), 2001 WL 540756, at *11; *Hill v. Abraham*, 00-327, p.7 (La. App. 5 Cir. 9/26/00), 770 So.2d 824, 828, we conclude that this evidence is sufficient to create a genuine issue of material fact regarding whether Caboni's head injuries were proximately caused by an unreasonably dangerous characteristic of the GM air bag, namely the nonconformity to an express warranty.

## IV.  CONCLUSION

For the foregoing reasons, the district court's judgment granting summary judgment in favor of Defendant- Appellee is REVERSED, and the case is REMANDED for further consideration.