United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 25, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 03-31118
_____

JAMES CABONI,

Plaintiff - Appellee - Cross-Appellant,

versus

GENERAL MOTORS CORP., ET AL.,

Defendants,

GENERAL MOTORS CORP.,

Defendant - Appellant - Cross-Appellee

_____

Appeals from the United States District Court
For the Eastern District of Louisiana

_____

Before BARKSDALE, GARZA, and DeMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

General Motors Corporation ("GM") appeals a judgment based on a jury verdict in favor of

James Caboni in his products liability action brought against GM pursuant to the Louisiana Products

Liability Act. The claim arises from an automobile accident in which the air bag in the truck Caboni

was operating failed to deploy. Finding no evidence of enhanced injuries, we VACATE the district court judgment and RENDER a take nothing judgment against Caboni.

I

James Caboni was driving his 1996 GM Chevy S-10 pickup truck in Louisiana when an unidentified vehicle swerved into his lane. Caboni testified that he took evasive action in order to avoid a collision which caused him to lose control of his truck and slam into the guardrail. The driver's side air bag in Caboni's truck did not deploy upon impact. The air bag system and truck were manufactured by GM.

Caboni sued GM in state court in Louisiana under the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. ANN. §§ 9:2800.51-9:2800.60, claiming damages for physical injuries, including injuries resulting from his head hitting the steering wheel because the air bag did not deploy. Caboni alleged that the air bag was unreasonably dangerous because it did not conform to an express warranty contained within the truck's owner's manual.[1] GM removed the case to federal court based on diversity jurisdiction and filed for summary judgment, contending that Caboni could not establish the essential elements required for an express warranty claim under the LPLA. The district court granted GM's motion, but we reversed and remanded for further consideration. *See Caboni v. Gen.*

_____

[1] The GM Owner's Manual for 1996 S-series pickup trucks states:

When should an air bag inflate?

The air bag is designed to inflate in moderate to severe front or near-frontal crashes. The air bag will inflate only if the impact speed is above the system's design "threshold level." If your vehicle goes straight into a wall but doesn't move or deform, the threshold level is about 13 to 18 mph (23 to 29 km/h). The threshold level can vary, however, with specific vehicle design, so that it can be somewhat above or below this range.

*Motors Corp.*, 278 F.3d 448 (5th Cir. 2002) ("*Caboni I*"). We concluded that genuine issues of material fact existed as to (1) whether the statement in the owner's manual about the air bag was an express warranty; (2) whether the driver was induced by the warranty to buy the truck; (3) whether the truck conformed to the warranty; and (4) whether the falsity of the warranty caused Caboni additional injuries. *Id.*

The jury found that Caboni sustained $295,000 in damages[2] and found GM 30% at fault. A judgment for $88,500 was entered against GM. GM filed a Motion for Judgment as a Matter of Law, which was denied. GM also filed a Motion to Alter or Amend the Judgment and Grant Remittitur that was granted. The district court eliminated Caboni's damages for loss of future earning capacity and reduced his damages for medical expenses from $100,000 to $25,680. Caboni refused the remittitur, and a new trial was held solely on loss of future earning capacity and medical expenses, past and future. The jury returned a verdict finding no damages for future medical expenses or loss of future earning capacity. The district court, therefore, entered an Amended Judgment in favor of Caboni for $37,381.50.[3] Caboni filed a Motion for a New Trial, which was denied.

II

GM appeals the judgment in favor of Caboni. GM argues that Caboni failed to prove (1) that his truck did not conform to an express warranty and (2) that he sustained an enhanced injury that was proximately caused because the express warranty was untrue, both issues having been raised in

---

[2] The jury awarded $50,000 for physical pain and suffering, loss of enjoyment of life, past and future; $70,000 for mental pain and suffering, and loss of enjoyment of life, past and future; $100,000 for medical expenses, past and future; and $75,000 for loss of future earning capacity.

[3] The Amended Judgment included $4,605.00 for past medical expenses to which the parties had stipulated.

its Motion for Judgment as a Matter of Law.

Judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P. 50(a)(1). Reviewing all of the evidence in the record, we "must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In so doing, we "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id*. at 151.

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. ANN. § 9:2800.52; *see also Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995). Under the LPLA, a plaintiff can prove that a product is unreasonably dangerous by showing nonconformity to an express warranty. LA. REV. STAT. ANN. § 9:2800.54(B). Caboni alleges that the air bag was unreasonably dangerous because it failed to conform to an express warranty.

> A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

LA. REV. STAT. ANN. § 9:2800:58.

GM argued for the first time during oral argument that the owner's manual for the pickup truck did not constitute an express warranty regarding the air bag because it was only a general description of the vehicle. Because GM failed to brief this issue on appeal, its argument that the excerpt in the truck's owner's manual[4] did not constitute an express warranty is considered waived.

---

[4] *See supra* note 1.

-4-

*See Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

GM argues next that the air bag did not fail to conform to the express warranty, as required under LA. REV. STAT. ANN. § 9:2800.58. The proper inquiry is "whether the air bag's performance matched that described by the language of the *warranty*, rather than whether the air bag performed as it was *designed* to perform." *Caboni*, 278 F.3d at 454 (emphasis in original).

GM relies almost entirely on Caboni's expert witness at trial, A.J. McPhate, in arguing that the air bag did not fail to conform to the express warranty because Caboni's truck was not traveling at a speed that met the threshold level and that the truck did not go straight into the guardrail. There is, however, more than adequate evidence in the record that the express warranty was untrue and the air bag did not perform as described in the owner's manual. McPhate testified that the accident was a moderate to severe near-frontal crash and that Caboni's truck was traveling at 15-20 mph laterally at the time it made impact with the barrier.[5] McPhate's testimony provides evidence that Caboni was traveling above the 13 to 18 mph threshold speed required in the owner's manual and that the accident was a near-frontal crash, which is all that the express warranty requires. We stated in *Caboni I* that "although it is not clear whether the 'threshold level' in the owner's manual . . . indicates lateral or longitudinal speed, we recognize that either speed indicated by McPhate (15 to 20 mph laterally or 65 to 75 mph longitudinally) fits within the requisite threshold." *Id*. at 455. Based on our prior ruling and the evidence elicited at trial, GM's argument that the air bag performed as described in the owner's manual fails because a reasonable jury could, and did, arrive at a verdict to the contrary.

---

[5] Q: What do you estimate in your opinion to have been the lateral speed?
A: From 15 to 20 miles per hour. (5/27/03 McPhate, R. 169)

Last, GM asserts that Caboni failed to show that his damages were "proximately caused because the express warranty was untrue." LA. REV. STAT. ANN. § 9:2800.58. The "proximate causation" element requires a plaintiff to establish that he sustained more severe injuries than he would have received if the air bag had deployed. *See Armstrong v. Lorino*, 580 So.2d 528, 530 (La.App. 4 Cir. 1991).

GM argues that Caboni failed to present any expert testimony on this issue. We agree with the district court in *Battistella v. Daimler-Chrysler Motors Co., L.L.C.* that "whether or not the failure of the driver's side air bag to deploy 'enhanced' plaintiff's injuries, is not a part of the everyday experience of the consuming public. Thus, jurors would need expert testimony to evaluate this issue." 2004 W.L. 1336444, at *2 (E.D.La. June 14, 2004); FED. R. EVID. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto . . ..").  GM asserts that its own expert, Dr. Tawfik Khalil, testified that the injury would be the same whether the air bag deployed or not.[6] Dr. Khalil based his opinion on crash tests that compared situations in which an air bag deployed with situations where the dummies hit the steering wheel. Dr. Khalil testified that the head injury in each situation would be about the same.[7]

---

[6] Dr. Khalil explained in his testimony that an air bag would not have prevented Caboni's injuries from the accident:

> Q: Dr. Khalil, do you have an opinion as to whether or not if the air bag in Mr. Caboni's truck had deployed in this accident, whether Mr. Caboni would have sustained a mild head injury?
> A: Yes, he would have. In my opinion, the injury would be the same whether the air bag deployed or not. (5/28/03 Khalil, R. 344).

[7] Q: Now, Dr. Khalil . . . does General Motors measure the head injury criteria or HIC of dummies who hit steering wheels?
A: Yes, we do.

-6-

The trier of fact, however, is not bound by expert testimony and is entitled to weigh the credibility of all witnesses, expert or lay. *See Webster v. Offshore Food Serv., Inc.*, 434 F.2d 1191, 1193 (5th Cir. 1970). Although the jury was not bound to accept the testimony of Dr. Khalil, the claimant in an LPLA products liability claim has the burden of proving every element of the claim, including enhanced injury from the air bag failing to deploy. LA. REV. STAT. ANN. § 9:2800.54(D). Caboni claims that he presented ample evidence at trial to establish that he sustained more severe injuries than he would have received if the air bag had deployed. Caboni argues that, despite GM's contention that Dr. Khalil was the only expert witness to testify on Caboni's enhanced injuries, Caboni also presented expert testimony, specifically: (1) Dr. Khalil testified that Caboni suffered head injuries when he hit the steering wheel; (2) McPhate testified that Caboni's head would probably not have hit the steering wheel had the air bag deployed properly; and (3) Dr. Morteza Shamsnia established that as a result of his head hitting the steering wheel, Caboni suffered a brain injury.

In *Caboni I*, we determined that plaintiffs had adduced sufficient evidence, through the opinion of three experts (Dr. Khalil, McPhate, and Dr. Roberta Bell), to create a genuine issue of

Q: And does General Motors measure the head injury or HIC criteria of seat belted dummies when the dummy hits the steering wheel?
A: Yeah, the HIC value, or the head injury criteria is the most basic injury that we tend to monitor because it's well understood that brain injury is the most serious injury, so we tend to measure that all the time and compare it with the 1,000 threshold number that was established for injury.
Q: [W]hat is the level or HIC or head injury criteria of somebody in say a 15 miles per hour crash straight into a wall where the air bag deploys compared to when the dummy hits the steering wheel?
A: . . . The variation would be in the range of, I would say, maybe 500 up to maybe 600, 650.
Q: Well, let's take the same type of vehicle, 15 miles per hour straight into a wall and an air bag deploys. In one of them the belted dummy strikes the steering wheel. Are the HIC or head injury criteria is going to be about the same?
A: It would be about the same. . . . (5/28/03 Khalil, R. 346-47).

-7-

material fact regarding whether the fact that the express warranty was untrue proximately caused additional injuries. 278 F.3d at 455. However, the conclusion reached in *Caboni I* by this court was based in significant part on the opinion of Dr. Roberta Bell, which the district court excluded at trial following our vacating the summary judgment in *Caboni I* and remanding for trial.[8] Dr. Bell had stated in her affidavit that "had the air bag in Mr. Caboni's vehicle deployed in this accident, his closed head or brain injury, more probably than not, would not have occurred or would not have been as severe." At trial, none of the experts presented by Caboni testified that he suffered *enhanced* injuries as a result of the air bag failing to deploy. Caboni offered no admissible testimony at trial that stated, as Dr. Bell had, that Caboni suffered more severe injuries than he would have received had the air bag deployed. Caboni attempts to replace Dr. Bell with Dr. Shamsnia as the "third expert". Dr. Shamsnia, however, only testified that Caboni suffered brain injuries as a result of the accident. He did not testify that the injuries Caboni suffered would have been different or less significant had the air bag deployed.

Caboni argues that he presented evidence from several other witnesses at trial that satisfy the enhanced injury test under the proximate causation element of his claim. The evidence that Caboni relies on, the testimony of Dr. Shamsnia, Dr. Bell, Dr. Khalil, and Caboni himself, again only demonstrate that he suffered an injury as a result of the accident, not that the injuries were more severe.

Finally, McPhate only testified that the deployment of the air bag would probably have

---

[8] The district court granted GM's Motion in Limine to Preclude Roberta Bell from giving opinion testimony concerning injury causation because she failed to meet the qualifications required by FED. R. EVID. 702. However, the district court determined that the other opinions contained in Dr. Bell's expert reports were admissible.

prevented Caboni's head from hitting the steering wheel, not that he would have suffered no injury to his head. Once again, McPhate did not testify that Caboni suffered enhanced injuries because the failure of the air bag to deploy resulted in his head hitting the steering wheel. Caboni believes that a reasonable jury could infer that, because his head would not have hit the steering wheel had the air bag deployed, he would have suffered less severe injuries. Caboni is wrong in stating that he does not have to present expert testimony to specifically state that he sustained more severe injuries than he would have received if the air bag had deployed because the jury could reach this conclusion based on the evidence in its entirety. As the court in *Battistella* stated, "whether or not the failure of the driver's side air bag to deploy 'enhanced' plaintiff's injuries, is not a part of the everyday experience of the consuming public." 2004 W.L. 1336444, at *2. Caboni has failed to meet this requirement, therefore, reasonable jurors could not arrive at a verdict against GM. *See Granberry v. O'Barr*, 866 F.2d 112, 113 (5th Cir. 1988).

## III

Since Caboni failed to elicit any evidence at trial that established that he sustained an enhanced injury that was proximately caused because an express warranty was untrue, we VACATE the district court judgment and RENDER take nothing judgment against Caboni.[9]

---

[9] Because we vacate the judgment for Caboni, we need not consider his claims that the district court abused its discretion by granting a remittitur and new trial on the jury's award for loss of future earning capacity and for medical expenses, past and future. It is also unnecessary to consider Caboni's claim that the district court abused its discretion in denying his motion for a new trial on the issue of permanent disability damages.