IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-20552

JENNA ARYAIN

Plaintiff - Appellant

V.

WAL-MART STORES TEXAS LP

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, JOLLY, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Jenna Aryain appeals the district court's grant of summary judgment in favor of Wal-Mart Stores Texas LP ("Wal-Mart") as to her Title VII claims of sexual harassment, constructive discharge, and retaliation. For the following reasons we affirm in part, reverse in part, vacate in part and remand.

I

On February 25, 2005, Wal-Mart hired Aryain as a cashier in the Tire Lube Express Department ("TLE").[1] Almost immediately thereafter, Aryain began to suffer unwelcome sexual comments and advances from Darrel Hayes,

---

[1] Because this case comes to us after a grant of summary judgment in favor of defendant Wal-Mart, we resolve disputed issues of fact in favor of the plaintiff Aryain and present them in the light most favorable to her. See LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007).

who was her superior in the TLE Department. Some of these comments occurred on a regular basis over her four-month tenure in the TLE department. For example, Hayes would, almost daily, comment to Aryain that her "butt looks good." Hayes also propositioned Aryain for a date almost daily. Other sexual comments occurred with less frequency but were markedly more severe.[2]

At some time between the beginning of Hayes's harassing conduct and June 23, Aryain complained to a TLE supervisor named C.J. Coker regarding Hayes. Also, at some point between March and June 20, 2005, another employee, Jessica Stassney, complained to two different assistant managers regarding sexually suggestive statements made by Hayes to Stassney. Wal-Mart did not respond to Stassney's complaints until August 2005 when an assistant manager asked her to provide a written statement.

Then on June 20, Hayes yelled at Aryain during work. Aryain responded by leaving for the day. After leaving work, Aryain explained to her parents about Hayes's conduct, including his sexually-charged comments over the previous four months. Aryain's father called the store manager, Gwendolyn Furr, to complain about Hayes's conduct. Furr assured Mr. Aryain that Wal-Mart would respond. On June 21, Aryain met with Furr and Chelly Whiddon, an assistant manager who supervised the infant department. In this meeting Aryain explained the details of her harassment complaint against Hayes, providing Furr with a list of the comments made by Hayes. Furr then interviewed Hayes, as well as a number of other associates and managers that

---

[2] Hayes told Aryain that she could "urinate in his mouth if she wanted." After noticing a woman with large breasts, Hayes asked Aryain how she felt about her breasts. Hayes told Aryain that "sometimes he wakes up with a hard on thinking about [Aryain]." Hayes asked Aryain if she had "ever been bent over and pounded." Hayes stated that he "likes to eat girls' pussies out" and "let them drain in his mouth." Hayes told Aryain that her "butt looked good" and that he "wanted to rub up on her." Hayes (who is an African-American male) told Aryain he could "show her a good time and how it's really done because he's better than all the white boys." Hayes asked Aryain if she had ever "been with a black guy before." Aryain understood this comment to refer to having sex. Hayes told Aryain that he wanted to take her clothes off. Hayes told Aryain that her "butt had gotten bigger since she started working at Wal-Mart."

Aryain identified as possibly having information to support her allegations. Around June 25, Furr concluded her investigation and determined that Aryain's harassment complaint could not be substantiated. She met with Aryain that same day to let her know that Wal-Mart could not pursue any disciplinary action against Hayes based on Aryain's allegations of sexual harassment.

Shortly after this meeting occurred, Furr received another phone call from Aryain's father requesting that Aryain be transferred away from the TLE department and Hayes. In response to this telephone call, Furr met again with Aryain and transferred her to the infant department.

After being transferred to the infant department, Aryain's superiors, specifically Furr and Whiddon, subjected her to the following actions. She was required, on one occasion, to break down clothing racks and move them to the back of the store. Aryain had to complete this task during a hot day. While completing this job, Aryain's back hurt and she felt sick from the heat but Whiddon told her to "get the job done" and denied her a break at that time. Furr and Whiddon watched her on a security camera while she loaded a disassembled clothing rack into a bin behind the store)) Whiddon said that she and Furr were watching Aryain to make sure she loaded the rack "nice and neat." Also, Whiddon and Furr refused to allow Aryain to take breaks on other occasions when she requested one. On another occasion, Furr knocked a load of clothes out of Aryain's arms when she was struggling to handle the load. Also, Furr and Whiddon would look at Aryain angrily, laugh at her, and talk negatively about her. Also, on a few occasions, Furr made Aryain wait outside Furr's office for long periods of time while Aryain waited to speak with Furr. Finally, on July 13 or 14 Aryain discovered that she was not included on the work schedule for the week of July 16.

On July 15, Aryain resigned. Her resignation letter indicated that she felt Wal-Mart had responded ineffectively to her complaints about Hayes, that

Whiddon and Furr treated her poorly after her transfer to the infant department, and that she had been left off the schedule because Wal-Mart was trying to force her to resign.

Based on the above facts, Aryain brought Title VII claims alleging sexual harassment, constructive discharge, and retaliation. The district court granted summary judgment in favor of Wal-Mart as to all claims.

## II

We review a district court's grant of summary judgment de novo. LeMaire., 480 F.3d at 386. Summary judgment is appropriate when, after considering the pleadings, discovery and disclosure on file, along with any affidavits, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A]ll facts and evidence must be taken in the light most favorable to the non-movant." LeMaire, 480 F.3d at 387. In reviewing the evidence at summary judgment, we must "refrain from making credibility determinations or weighing the evidence." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007). Finally, we are not limited to the district court's reasons for its grant of summary judgment. We may affirm the district court's summary judgment on any ground raised below and supported by the record. See Zaffuto v. City of Hammond, 308 F.3d 485, 493 (5th Cir. 2002).

## III

With regards to Aryain's sexual harassment claim, we first address the requirements of Aryain's prima facie case. Finding that issues of fact remain as to Aryain's prima facie case, we proceed to analyze Aryain's constructive discharge claim. We address Aryain's claim of constructive discharge at this

point because it implicates Wal-Mart's ability to raise the Ellerth/Faragher defense to vicarious liability.[3] A showing of constructive discharge can trigger strict vicarious liability under Title VII, thus precluding an employer from asserting the defense. Because we hold that Aryain cannot make out a claim of constructive discharge, we conclude our analysis of Aryain's harassment claim by considering whether issues of fact remain as to Wal-Mart's affirmative defense.

A

Wal-Mart urges that we affirm the summary judgment because Aryain cannot make out her prima facie case of supervisor harassment.[4] Aryain's prima facie case requires four elements: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment." Lauderdale v. Tex. Dep't of Criminal Justice, 512 F.3d 157, 163 (5th Cir. 2007). (internal quotation marks omitted). Wal-Mart concedes that the first three elements are satisfied but

---

[3] Employers may assert a single affirmative defense to claims of vicarious liability for sexual harassment carried out by supervisors in their employ. The affirmative defense is only available if no tangible employment action is taken against the aggrieved employee. To satisfy the affirmative defense, the employer must show by a preponderance of the evidence: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); accord Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998).

[4] The district court relied solely on Wal-Mart's having satisfied its affirmative defense and did not address Aryain's prima facie case. However, Wal-Mart raised the issue below and now presents it to us as grounds for affirming the district court's grant of summary judgment.

Our case law distinguishes between the prima facie case required for a harassment claim against a co-worker as opposed to a claim against a supervisor. See Harvill v. Westward Commc'ns LLC, 433 F.3d 428, 434 (5th Cir. 2005) (describing elements of co-worker prima facie case). There is no dispute that Hayes was Aryain's supervisor during the period of alleged harassment. See Ellerth, 524 U.S. at 765 (noting that an employer may be vicariously liable "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee").

argues that Aryain failed, as a matter of law, to establish the fourth element. To affect a term, condition, or privilege of employment, the harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." Id. (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). The environment must be deemed "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998).

Wal-Mart argues that Aryain's prima facie case fails because she did not subjectively perceive her working environment to be hostile or abusive.[5] To support its argument, Wal-Mart points to evidence that Aryain did not complain to Hayes about his allegedly harassing comments, and that Aryain was able to continue performing her job in the TLE department for four months despite the comments. Wal-Mart also points to Aryain's failure to report Hayes's conduct during her May performance evaluation, and the fact that during Furr's investigation, Aryain stated that she still felt comfortable working in TLE as long as Hayes did not know about her harassment complaint. However, Wal-Mart overlooks the fact that Aryain told Furr that she would rate Hayes's harassing conduct as a ten on a scale of one to ten. She also stated that she was happy to be away from Hayes, that she did not want to work alone with Hayes, and that she felt humiliated every time he made one of his sexually-charged comments. Finally, Aryain indicated that had her father not raised the initial complaint, she would have gone to Furr. Wal-Mart also ignores the fact that Aryain pursued harassment complaints with Wal-Mart and the EEOC. This evidence is sufficient to allow a jury to conclude that Aryain subjectively

---

[5] Wal-Mart raises no argument on appeal as to the objective hostility of Aryain's work environment. Accordingly, we do not address the issue. See Askanase v. Fatjo, 130 F.3d 657, 668 (5th Cir. 1997) (recognizing that issues not briefed on appeal are waived).

perceived her working environment in the TLE department as hostile or abusive. See Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 n. 4 (9th Cir. 2005) (finding sufficient evidence of subjective hostility based on plaintiff's testimony regarding her negative perception of the environment and plaintiff's filing an EEOC complaint). Consequently, the district court's grant of summary judgment cannot rest on Aryain's failure to make out a prima facie case of sexual harassment.

B

We turn now to Aryain's claim of constructive discharge. A successful claim of constructive discharge entitles an employee who resigned to recover "all damages available for formal discharge." Penn. State Police v. Suders, 542 U.S. 129, 147 n. 8 (2004). However, a constructive discharge claim also may serve a broader purpose for a plaintiff. In certain circumstances, a constructive discharge can be considered a tangible employment action that precludes an employer from asserting the Ellerth/Faragher defense to vicarious liability. See Ellerth, 524 U.S. at 765 (holding that an employer is strictly liable for supervisor harassment that "culminates in a tangible employment action"); Suders, 542 U.S. at 140-41 (holding that an employer does not have recourse to the affirmative defense when a "supervisor's official act precipitates the constructive discharge"). Aryain contends that she was subject to a tangible employment action in the form of a constructive discharge. However, Aryain has not submitted evidence that would allow a reasonable jury to find a constructive discharge occurred. Accordingly, her constructive discharge claim cannot survive summary judgment, and Wal-Mart is entitled to raise its affirmative defense.

In determining whether an employer's actions constitute a constructive discharge we ask whether "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to

resign." Suders, 542 U.S. at 141; see McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007) (stating same standard). A plaintiff alleging that sexual harassment alone compelled him to resign must present "something more" than what is required to establish a harassment or hostile work environment claim. Suders, 542 U.S. at 147; see Harvill, 433 F.3d at 440 (noting that a plaintiff "must demonstrate a greater severity of pervasiveness of harassment than the minimum required to prove a hostile working environment"). In this case, the alleged harassment, on its own, was not so egregious as to compel a reasonable employee to resign. See Landgraf v. USI Film Products, 968 F.2d 427, 430-31 (5th Cir. 1992) (finding that "substantial harassment" involving "continuous and repeated inappropriate verbal comments and physical contact," did not rise to the level necessary to establish a constructive discharge claim).

Aryain also points to the actions taken by Wal-Mart after her transfer to the infant department which she contends, when coupled with Hayes's conduct, establish her constructive discharge claim. We have identified six factors to aid our constructive discharge inquiry:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 771-72 (5th Cir. 2001).

Factors (1) and (2) are inapplicable. Aryain admitted that the transfer to the infant department was not a demotion and that her salary remained unchanged. As Aryain was a college student and hourly employee, factor (6) does not apply. We turn our attention to factors (3), (4), and (5). As to reduction in her job responsibilities, Aryain alleges that she had less customer interaction after the transfer. Aryain also claims that after her transfer to the infant department she was tasked with menial or degrading work because her

supervisors had her break down clothing racks and move those clothing racks to the back of the store. Aryain testified in her deposition that she viewed the assignment as "punishment." Aryain contended that breaking down clothing racks was "tough work" that "only the guys did . . . at night." Aryain also contends that Furr and Whiddon, watched her on a security camera during part of this task. In terms of the fifth factor, badgering and harassment, Aryain provided no evidence that Hayes's sexually offensive conduct was "calculated to encourage" her resignation. However, Aryain alleges that Whiddon and Furr acted to encourage her resignation by denying her the ability to take breaks on certain occasions. Aryain admitted that she was never actually denied a break, only that her requests for specific times were denied. Aryain claims that Furr once knocked a load of clothes out her arms, and that Furr and Whiddon would look at her angrily, laugh at her, and talk negatively about her. Aryain alleges that Furr made her wait outside the office for long periods of time when Aryain wanted to speak with Furr. Finally, Aryain points to being left off of the July 16 work schedule as an indication that her supervisors sought to force her to resign.

Even taking the facts in the light most favorable to Aryain, we do not believe that a reasonable employee in her position would have felt compelled to resign. The poor treatment alleged by Aryain does not reach the level required to establish a constructive discharge claim. See Brown v. Bunge Corp., 207 F.3d 776, 782-83 (5th Cir. 2000) (affirming grant of summary judgment even where employee was demoted and given fewer job responsibilities); Stephens v. C.I.T. Group/Equip. Fin., Inc., 955 F.2d 1023, 1027-28 (5th Cir. 1992) (affirming jury verdict on constructive discharge where plaintiff had been demoted, faced significant reductions in salary and responsibilities, and was repeatedly asked when he planned to quit).

Also, Aryain never raised any complaint about the negative treatment she supposedly endured in the infant department. After discovering that she was

left off the schedule, Aryain resigned just a day or two later, giving Wal-Mart no opportunity to improve her situation in the infant department. In the constructive discharge context, we have recognized that "part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast." Dornhecker v. Malibu Grand Prix Corp., 828 F.2d 307, 310 (5th Cir. 1987) (quoting Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987)); see Haley v. Alliance Compressor LLC, 391 F.3d 644, 652 (5th Cir. 2004) (noting that a reasonable employee often should pursue less drastic options before choosing to leave her job). Aryain was transferred to the infant department on June 25 and resigned just 20 days later on July 15. She testified that she did not complain during this time because: (1) she believed that complaining about Hayes had not gotten her anywhere; and (2) she felt that she was being treated "like crap" and "was ready to quit." Aryain's testimony indicates that she assumed the worst and made no effort to allow Wal-Mart the opportunity to remedy the problems she identified. While Aryain may have subjectively felt that resignation was the only viable option, her working conditions at Wal-Mart would not compel a reasonable employee to resign. Accordingly, Aryain cannot prove her constructive discharge claim. Because Aryain's constructive discharge claim fails, Wal-Mart may raise the Ellerth/Faragher defense to vicarious liability.

C

The district court held that no issues of fact remained as to whether Wal-Mart could prove its affirmative defense, and accordingly granted summary judgment in favor of Wal-Mart on Aryain's harassment claim. We disagree.

To satisfy its affirmative defense, Wal-Mart must show by a preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative

or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765; accord Faragher, 524 U.S. at 808. Wal-Mart cannot establish the first element of the defense as a matter of law. While Wal-Mart responded in an efficacious manner after Aryain's father called Furr on June 20, the summary judgment evidence reveals a material fact dispute as to whether Wal-Mart failed to exercise reasonable care in not responding to Hayes's harassing behavior sooner. See Williams v. Admin. Rev. Bd., 376 F.3d 471, 479 (5th Cir. 2004) (analyzing employer's response to complaints of harassment under first prong of defense); Cerros v. Steel Tech., Inc., 398 F.3d 944, 953 (7th Cir. 2005) (recognizing "prompt investigation of the alleged misconduct as a hallmark of reasonable corrective action") .

The summary judgment record includes evidence indicating that Wal-Mart knew of Hayes's harassing conduct prior to June 20. An affidavit filed by Aryain and Wal-Mart's internal record of the investigation both provide that Aryain complained to C.J. Coker, another of her supervisors in the TLE department, about Hayes's comments. The record does not indicate when Coker received this complaint. We know only that it must have occurred after Hayes's harassing conduct began in February and before Coker was interviewed by Furr on June 23. Aryain complained to Coker that Hayes made comments that generally "made her uncomfortable," including comments about Aryain's "butt."[6]

Along with the evidence regarding Coker's notice of her harassment, Aryain also provides the affidavit of Jessica Stassney. Stassney's affidavit indicates that she suffered harassment by Hayes on six occasions between March

---

[6] Wal-Mart contends that Coker told Aryain to follow up with a complaint to management. However, Aryain disputes whether Coker told her to follow up with management and we must resolve disputed facts in Aryain's favor at this stage. At oral argument, Wal-Mart argued, for the first time that Aryain's complaint to Coker was insufficient to put Wal-Mart on notice of Hayes's harassing conduct because Coker was not a salaried manager and Wal-Mart's harassment policy required that a report be made to a salaried manager. Wal-Mart failed to raise this argument in its briefing and thus waived the argument. See Caboni v. Gen. Motors Corp., 398 F.3d 357, 360 (5th Cir. 2005) (indicating that arguments raised for the first time at oral argument are waived).

and June 2005)) the incidents detailed in her affidavit range from comments regarding Stassney's looks to unwelcome requests for sex.[7] Stassney avers that she reported Hayes's conduct to two separate assistant managers, Bill Hale and Len Smith, between March and June 2005. Smith was Hayes's boss and manager of the TLE department. Stassney avers that she received no response to her complaints until August 2005 when Hale asked her to provide a written statement.

Based on the current record, it is impossible to determine exactly when Coker received notice of Hayes's harassment of Aryain or when Hale and Smith received notice of Hayes's harassment of Stassney. However, the record does not rule out the possibility that Wal-Mart had notice of Hayes's harassing conduct against both Aryain and Stassney well before June 20 when Furr initiated her investigation into Aryain's harassment complaints. Stassney's affidavit indicates that two assistant managers with knowledge of Hayes's harassing conduct towards her waited at least two months to respond to her complaints. Moreover, Stassney's affidavit indicates that Wal-Mart's failure to respond may have been a trend at this particular store location. Stassney and Aryain's affidavit testimony suggests that Wal-Mart received multiple complaints about

---

[7] Wal-Mart argues that it lacked notice of Stassney's complaints in time to prevent or correct the harassment suffered by Aryain because Stassney did not provide her written statement until August 2005. In Stassney's August 2005 statement she indicates that she did not complain previously. However, Stassney provided sworn affidavit testimony that she complained to Hale and Smith at some point between March and June 2005. Any inconsistencies between her written statement and her affidavit go to Stassney's credibility and should not be resolved by this court on summary judgment review. See Turner, 476 F.3d at 343.

Stassney also avers that she lodged a complaint with Furr involving alleged harassment by a different employee, a co-worker named David. Stassney's affidavit indicates that Furr did nothing in response to her complaint. Finally, Stassney's affidavit recounts two additional complaints)) one based on alleged harassment by a co-worker named Ted and one based on harassment by customers. According to Stassney, neither of these complaints was taken seriously. These instances are less probative of Wal-Mart's notice of Hayes's behavior, and therefore, less probative of preventative and corrective measures related to Aryain. However, as with Stassney's other testimony regarding Wal-Mart's failure to respond, the evidence supports Aryain's argument of a general unwillingness on the part of Wal-Mart to respond to allegations of sexual harassment.

Hayes's sexually harassing conduct as early as March 2005 but failed to respond until Aryain's father called Furr on June 20. Viewing the record in the light most favorable to Aryain, we believe a jury could conclude that Wal-Mart failed to exercise reasonable care to prevent and correct Hayes's harassing behavior.

The Ellerth/Faragher affirmative defense is conjunctive, the defendant bears the burden of proving both elements by a preponderance of the evidence. See Ellerth, 524 U.S. at 765 ("The defense comprises two necessary elements."). As issues of fact remain regarding the first element concerning Wal-Mart's preventative and corrective action, we need not address the second element. Because issues of fact remain as to Wal-Mart's entitlement to the Ellerth/Faragher defense, we reverse the district court's grant of summary judgment on Aryain's harassment claim.

IV

Aryain claims that her Wal-Mart superiors retaliated against her after she brought her complaints about Hayes. See 42 U.S.C. § 2000e-3. To establish a prima facie case of retaliation, Aryain must show that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action. See McCoy, 492 F.3d at 557. "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action." Id. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason. See id.

A

Wal-Mart does not dispute that Aryain engaged in protected activity when she lodged her formal complaint with Furr regarding Hayes's alleged

13

harassment.[8]  To establish that she suffered an adverse employment action, Aryain points to the same conduct described above with regard to her constructive discharge claim.  First, Aryain claims that managers Furr and Whiddon changed their attitude towards her after she made her complaint against Hayes and subjected her to negative treatment.  Second, Aryain points to her undesired transfer to the infants department.  Finally, Aryain contends that her superiors made her do harder work in the infant department and left her off of the work schedule for the week of July 16 in retaliation for her bringing the complaint against Hayes.  The Supreme Court recently clarified what is required at the second step of a plaintiff's prima facie case in the retaliation context, holding that a retaliation claim may rest on an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).[9]  In White, the Supreme Court noted that the materiality requirement reflects the importance of separating "significant from trivial harms."  Id.  With this standard in mind, we examine the incidents of retaliatory conduct alleged by Aryain.

Aryain alleges that after she made her complaint, that store manager Furr and Whiddon, the manager of the infants department, treated her poorly. Aryain repeats the rude treatment outlined above with regard to her

---

[8] An employee has engaged in protected activity when he or she has (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  We have recognized that an employee's complaint to the head of personnel constituted a protected activity.  See Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002).

[9] In adopting this standard, the Supreme Court abrogated our earlier approach which required a showing of an "ultimate employment decision," such as "hiring, granting leave, discharging, promoting, and compensating" to establish a prima facie retaliation claim.  Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997).

constructive discharge claim. As a matter of law, these allegations do not rise to the level of material adversity. Instead they fall into the category of "petty slights, minor annoyances, and simple lack of good manners" that employees regularly encounter in the workplace, and which the Supreme Court has recognized are not actionable retaliatory conduct. White, 548 U.S. at 68; see Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (noting that Title VII does not set forth a "general civility code for the American workplace.").

We next consider Aryain's transfer to the infant department. While working in the TLE department, Aryain served as a cashier. In the infant department, Aryain worked as a sales associate. Her duties in the infant department were somewhat different than what she did in TLE, and according to Aryain involved less customer interaction. However, there was no evidence that the sales associate job was viewed as more arduous or less prestigious. See White, 548 U.S. at 71 (indicating that these factors could cut in favor of material adversity). Aryain's deposition testimony indicates that she would have preferred to have been transferred to the lawn and garden department, sporting goods, or to a front-end cashier's job. However, Aryain's subjective preference for a different position cannot make her transfer to the infant department a materially adverse action. See White, 548 U.S. at 68 (noting that standard is objective). Aryain admitted that she did not view the transfer as a demotion, and that it did not involve a pay cut. She also testified that she was not embarrassed about being transferred to the infant department. While we recognize that a lateral reassignment to a position with equal pay could amount to a materially adverse action in some circumstances, we do not believe that Wal-Mart's act of transferring Aryain from TLE to the infant department (an action taken at the request of Aryain's father) would dissuade a reasonable employee in her circumstances from making or supporting a discrimination charge. See Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 662 (7th Cir.

15

2005) (finding lateral transfer materially adverse where it impacted employee's flex-time schedule which was critical to care for her disabled child); Kessler v. Westchester County Dept' of Social Servs., 461 F.3d 199, 209-210 (2d Cir. 2006) (finding that lateral transfer which did not impact job title, job grade, salary or benefits could be found materially adverse where employee alleged he was stripped of significant responsibilities); cf. White, 548 U.S. at 71 (noting that reassignment of job duties is not automatically actionable; material adversity of a reassignment "depends upon the circumstances of a particular case").

Aryain points to specific actions taken by her supervisors after the transfer that she contends would dissuade a reasonable employee from complaining about sexual harassment. Again, she refers to her assignment breaking down clothing racks. Despite the fact that Aryain had never seen a female employee break down the clothing racks, her testimony does not rebut the deposition testimony of Furr and Whiddon indicating that they (both female employees) had broken down clothing racks before. Furr also stated that breaking down clothing racks was a job done by everyone in the store, from managers down to sales associates. Moreover, the job description for an infant sales associate indicates that employees must be able to "constantly" pick up, lift, and carry supplies "up to 20 pounds without assistance and over 20 pounds with team lifting." Finally, Aryain admitted that she was assigned to carry out the task along with another female sales associate in the infant department. This single assignment would not dissuade a reasonable employee from making or supporting a charge of discrimination. See Roney v. Ill. Dep't of Transp., 474 F.3d 455, 461 (7th Cir. 2007) (finding that plaintiff could not establish prima facie case of retaliation because employee suffered no material adversity based on routine assignment); compare White, 548 U.S. at 70-71 (finding that employee could be dissuaded by reassignment to "more arduous and dirty" job duties that were seen as "less prestigious" by co-workers).

Next, Aryain repeats her complaint about her undesirable break schedule. Aryain's allegations with regard to her break schedule fail, as a matter of law, to rise to the level of material adversity. An employee in Aryain's position reasonably can expect to have some break requests denied by a supervisor)) in the context of an entry-level retail job, these denials amount to nothing more than the "petty slights" or "minor annoyances" that all employees face from time to time. White, 548 U.S. at 68.

Finally, Aryain argues that an issue of fact exists as to whether Wal-Mart's leaving her off of the work schedule for July 16 constitutes a materially adverse action. In her appellate brief, Aryain contends that her exclusion from the work schedule was materially adverse because it deprived her of compensation and sent a message that she was no longer wanted at Wal-Mart. However, even assuming that Aryain has established her prima facie case, Aryain's claim ultimately fails because Wal-Mart produced a legitimate, non-retaliatory reason for the scheduling error, and Aryain has not presented sufficient evidence to establish an issue of fact as to pretext.

B

To counter Aryain's prima facie case of retaliation, Wal-Mart contends that Aryain's being left off the schedule resulted from an inadvertent mix-up. Wal-Mart explained that computers automatically generate employee schedules. Overall responsibility for each department's schedule is held by an assistant manager. Len Smith was responsible for the TLE schedule while Whiddon was responsible for the infant department schedule. When Furr decided to transfer Aryain to the infant department, she did not change Aryain's job code to coincide with the change in department. In her deposition, Furr indicated that a change in job code would have automatically reduced Aryain's hourly wage. Seeking to avoid the wage reduction, Furr left Aryain under a TLE job code despite her transfer to the infant department. The week of Aryain's transfer was the same

week that the schedules for July 16 were being created. Whiddon testified that she assumed Smith was responsible for Aryain's schedule. But Smith did not put Aryain into the TLE schedule. Both Whiddon and Furr testified that they did not realize Aryain's lack of a schedule until she resigned. According to Wal-Mart, it was the confusion resulting from the mismatch between her job code and her actual position, rather than retaliation, that led to Aryain being excluded from the work schedule for the week of July 16. Based on the deposition testimony of Furr and Whiddon, Wal-Mart satisfied its burden of producing a legitimate, non-retaliatory reason for Aryain being left off of the work schedule for the week of July 16. Because Wal-Mart satisfied its burden, Aryain must show that a material issue of fact exists as to whether Wal-Mart's explanation is pretextual. See Gee v. Principi, 289 F.3d 342, 347 (5th Cir. 2002).

To establish pretext, Aryain points to Whiddon's knowledge of her complaint about Hayes, and the temporal proximity between her complaint and the scheduling error. However, temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason. See Strong v. Univ. Healthcare Sys., LLC, 482 F.3d 802, 808 (5th Cir. 2007). As further proof of pretext, Aryain points to her other allegations of retaliation. A plaintiff cannot prove pretext simply by re-raising her otherwise non-actionable allegations of retaliation) ) such an argument offers no more than the plaintiff's subjective belief that the defendant acted in a retaliatory manner on multiple occasions. See Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005) (rejecting an argument that was based on plaintiff's speculation as to retaliatory motive); Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000) (refusing to rely upon a plaintiff's subjective belief as to discriminatory intent). She also argues that Wal-Mart's failure to invite her back to work after discovering its "inadvertent" scheduling error calls into question Wal-Mart's non-retaliatory reason for the scheduling error. Aryain's

claim that Wal-Mart should have asked her to come back to work after learning of the scheduling error does little to undermine the credibility of Wal-Mart's legitimate explanation for why the scheduling error occurred in the first place. While Aryain may have preferred for Wal-Mart immediately to respond to the allegations in her resignation letter to clear up any misunderstanding, Wal-Mart cannot be penalized for failing to correct what it perceived as Aryain's misconceptions or to convince Aryain of its proper motive prior to litigation. Because Wal-Mart has put forth a legitimate explanation for Aryain's absence from the July 12 schedule, and because Aryain has not submitted sufficient evidence that this reason was pretextual, her retaliation claim fails as a matter of law.

V

We AFFIRM the district court's judgment as to Aryain's claims of constructive discharge and retaliation. Because genuine issues of material fact remain, we REVERSE the district court's judgment as to Aryain's harassment claim, and we VACATE the district court's judgment accordingly. We REMAND for proceedings consistent with this opinion.