# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 3, 2014

Lyle W. Cayce
Clerk

No. 13-20670
Summary Calendar

JACKIE GUDGER,

> Plaintiff - Appellant

v.

CITGO PETROLEUM CORPORATION,

> Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-2145

Before HIGGINBOTHAM, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:*

Jackie Gudger, an African-American woman, brought suit against CITGO Petroleum ("CITGO") for violations of Title VII, alleging race discrimination, retaliation, and a race-based hostile work environment. The district court granted summary judgment to CITGO. We AFFIRM.

## I.  Factual and Procedural Background

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20670

Plaintiff-Appellant Jackie Gudger worked as a Senior Administrative Assistant in CITGO's Health, Safety, Security and Environmental Department ("HSSE") from January 2007 until her termination in January 2012. This position required Gudger to perform various administrative tasks, such as distributing departmental paperwork, preparing correspondence, and providing administrative assistance to HSSE managers.

In January 2011, CITGO Health Services Manager Shelby Davis submitted a complaint of harassment against Gudger, asserting that Gudger spoke unprofessionally and behaved disrespectfully during a meeting. The complaint asserted that Gudger had said that Davis "sucked" for recommending a particular hotel for a company event, had responded rudely when questioned, and then had derailed the meeting into a discussion of a recent health services reimbursement that Davis had denied Gudger. Gudger responded by filing a complaint of harassment against Davis, asserting that Davis had harassed her in the same meeting by asking her "Are you okay?" when Gudger was upset. Gudger asserted that she felt "called out." Human Resources ("HR") employees investigated, interviewed the meeting participants, and found that Davis had not acted inappropriately but that Gudger had. Gudger was counseled about remaining professional in the workplace. The record shows that during this investigation, multiple managers in Gudger's department indicated there were ongoing problems with Gudger's communication and level of professionalism.

In May 2011, an HR business manager met with Dennis Calhoun, an HSSE manager, to discuss HSSE managers' concerns regarding Gudger "pushing back" on the work assigned to her, and multiple instances in April and May when Gudger questioned tasks assigned to her. Calhoun noted that Gudger was still meeting performance expectations, and opted to review Gudger's job description with her to resolve the issues.

2

No. 13-20670

In July 2011, Gudger filed a complaint with HR asserting that she was being harassed by Paulette Fonteno, a white woman and an HSSE manager. Gudger complained that Fonteno said that Gudger was difficult to work with during a performance review. The complaint then detailed various actions that Fonteno had taken recently, including discussing moving Fonteno's health file from a location that Gudger had access to[1]; revoking Gudger's access to Fonteno's calendar; and asking not to receive email reminders from Gudger. Gudger's complaint asserted that Calhoun gave Fonteno "preferential treatment," and that Gudger was being labeled the "bad person in the group." The complaint did not mention race. Shortly thereafter, Gudger filed a complaint asserting that Doris Jones, an African-American woman and a temporary employee, was contributing to the harassment. Gudger complained that Fonteno would tell Jones "nasty things about" Gudger, including that she was the reason Shelby Davis left CITGO and that she was a "lousy assistant," and then Jones would convey those comments to Gudger. She also complained about Jones's work performance, asserting that Jones was not busy and was always on her cell phone. Gudger later amended her HR complaint to include an allegation that Jones called her "a bitch" and said Gudger had "sold out" after Jones found out that Gudger had filed an HR complaint.

Eventually, Gudger asked Human Resources to limit the investigation of her complaints to: (1) the placement of Fonteno's health file; (2) Fonteno's statements to Calhoun that Gudger was difficult to work with, and to Jones that Gudger was a "lousy assistant"; (3) Fonteno's alleged statement to Jones that Gudger was the reason Davis left CITGO; and (4) Jones's alleged

---

[1] Gudger never explains why the placement of Fonteno's health file had any relevance or significance to Gudger, or why the moving of the file would have constituted any form of harassing behavior against Gudger.

3

statement that Gudger was "a bitch" who had "sold out" by complaining to HR. Gudger did not raise any issues relating to race.

On July 28, 2011, during the HR investigation of her complaints, Gudger told an HR business manager that the harassment had "become racial," although she said that no one had made any racial comments to her. Later that same day, Jones asserted that Gudger had come to Jones's office, swore at her, called her a "bitch" and a "lesbian bitch," and threatened her. On the morning of July 29, 2011, the HR business manager spoke with Gudger again. Gudger denied threatening Jones, and asserted that Jones had actually threatened to kill her. Gudger also revealed that she called Jones's staffing agency to give negative feedback about Jones, in violation of CITGO confidentiality rules. Later on July 29, Gudger informed the HR business manager that Fonteno had previously told Gudger "Black is whack and she's got Doris on her back," referring to Doris Jones. She said in an email that she had not mentioned the comment earlier during the investigation because she "didn't think it really mattered at the time."

After the HR investigations resulting from the multiple complaints, CITGO issued Gudger a Final Warning Letter on September 23, 2011. The letter provided that HR found that Gudger had acted inappropriately, including by violating company confidentiality policies, including HSSE managers on email distribution lists after being asked to remove them, communicated disrespectfully and lacked willingness to assist other employees. The letter provided that failure to correct the behavior could lead to more severe discipline, including termination.

On January 9, 2012, Fonteno reported to HR that Gudger followed Jones in CITGO's parking garage and then threatened or yelled at her on three occasions in October 2011, November 2011 and January 2012. As a result, Fonteno was afraid for Jones's safety and did not renew Jones's contract with

CITGO.    An HR employee investigated Fonteno's report, which was corroborated by Jones and another employee.    On January 12, HR recommended Gudger's termination.  Company protocol required the formal approval of the CITGO Vice President in charge of HSSE.  Emails and other documentation reflect that the Vice President was out of the office but approved the termination decision on January 12.  CITGO suspended Gudger with pay on January 13, pending formal approval of the termination decision. The Vice President returned to the office and finalized Gudger's termination on January 19, 2012.

Gudger filed a charge of discrimination at the EEOC on January 13, 2012.  She filed suit in federal court on June 17, 2012.  CITGO answered, and subsequently moved for summary judgment on all claims.  The district court granted summary judgment to CITGO.  Gudger appeals.

## II.  Discussion

We review the district court's order granting summary judgment de novo.  *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 478 (5th Cir. 2008). Summary judgment is appropriate when, after considering the pleadings, discovery, and affidavits, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  *Id.*; Fed. R. Civ. P. 56(a).  In considering a summary judgment motion, all facts and evidence must be taken in the light most favorable to the non-movant. *Aryain*, 534 F.3d at 478.  However, to satisfy its burden, the party opposing summary judgment is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Gudger argues that the district court erred in granting summary judgment to CITGO on her race discrimination and retaliation claims.  She argues that three adverse employment actions were taken against her as a

result of race discrimination or retaliation: (1) the final warning letter issued to her in September 2011; (2) her suspension in January 2012; and (3) her termination in January 2012.

Under the *McDonnell Douglas* burden-shifting standard, if the plaintiff makes a prima facie showing of discrimination or retaliation, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or non-retaliatory reason for its employment action. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the employer meets its burden, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *Id.*; *see Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

The district court found that Gudger failed to make a prima facie case of either race discrimination or retaliation. The district court also concluded that "the submissions of the parties clearly demonstrate that CITGO had legitimate, nondiscriminatory reasons for terminating Gudger (her behavioral issues), and Gudger pointed to no evidence that creates a genuine fact issue as to whether CITGO's proffered reason for terminating her is pretextual." We agree. Even if we assume that Gudger has met her prima facie burden on both her claims of race discrimination and retaliation, CITGO has proffered a legitimate, non-discriminatory, non-retaliatory reason for the challenged adverse actions against Gudger: her escalating communication and behavioral problems. Gudger has not pointed to any summary judgment evidence that would support a finding that this reason was pretextual.

While Gudger vaguely asserts that the three CITGO HR investigators and the multiple witnesses they interviewed regarding Gudger's behavior are lying, Gudger makes no argument regarding pretext on appeal and makes no attempt to show how any of the evidence in the record shows that CITGO's

stated reason for disciplining and terminating her was untrue or was not the real reason. By contrast, CITGO points to substantial evidence in the summary judgment record showing that it warned, suspended and eventually terminated Gudger due to her behavior problems, including her difficulty acting and communicating professionally, which escalated throughout 2011, culminating in three reports that Gudger was threatening and nearly stalking another employee at work. In response, Gudger points to no summary judgment evidence contradicting CITGO's stated reasons or showing that CITGO's stated reasons were untrue and that CITGO was actually motivated by her race or by her filing of complaints. In these circumstances, the district court correctly granted summary judgment to CITGO on Gudger's claims of race discrimination and retaliation.

Gudger last argues that the district court erred in granting summary judgment to CITGO on her claim of hostile work environment, based on its conclusion that Gudger had not made a prima facie case. For a Title VII hostile work environment claim, Gudger must show she (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive so as to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998).

We agree with the district court that Gudger has failed to demonstrate a genuine issue of material fact regarding a prima facie case of hostile work environment. The only race-based allegation that Gudger makes is that Fonteno told Gudger that "black is whack." A single comment generally will not suffice to survive summary judgment. *Hockman v. Westward Comm.*, LLC, 407 F.3d 317, 328 (5th Cir. 2004). Gudger herself told HR that the harassment

she was reporting had "turned racial" but, when pressed, admitted no one had made any racial comments toward her and, apart from the single "black is whack" comment, could not make any connection between her race and the alleged harassment. Finally, Gudger's suggestion that the reports of her own harassing behavior were actually race-based harassment against Gudger are completely unsupported by the summary judgment record, where full investigations of every complaint were conducted, witnesses supported HR investigators' conclusions that Gudger had acted inappropriately, and Gudger herself admitted that many of her own complaints of harassment were "trivial" and made in an attempt to protect her job. The district court did not err in granting summary judgment to CITGO.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to CITGO on all claims.