GRAVES, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that the district court properly granted summary judgment to Schmidt on Bellard’s race discrimination claim, for the reasons given by the majority. I also agree that the district court properly granted summary judgment *452 to Schmidt on Spencer’s race discrimination claim, but I write separately because I do not think there is any need for us to determine whether Machen was a supervisor under Vance v. Ball State Univ., — U.S. -, 133 S.Ct. 2434, 186 L.Ed.2d 565 (2013). Finally, I dissent from the majority’s affirmance of the grant of summaiy judgment to Schmidt on Spencer’s claim of retaliation.

I. Spencer’s Hostile Work Environment Claim

The majority concludes that the grant of summary judgment on Spencer’s hostile work environment claim was correct because the record establishes that Machen is not a supervisor under Vance. In Vance, the Supreme Court held “that an employee is a ‘supervisor’ for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim.” Vance, 133 S.Ct. at 2439. A tangible employment action is “a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.” Id. at 2443 (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). The summary judgment record before us was created pre-Vcmce, when it was sufficient to show that an alleged harasser was a supervisor if he had “immediate (or successively higher) authority over the employee.” Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353-54 (5th Cir.2001). In my view, there is simply not enough evidence in the record about this worksite or the role of foremen to determine that Machen was not a supervisor under Vance. Though the firing decisions are apparently ultimately made or approved by Schmidt managers, the record shows that foremen have some authority and input regarding firing decisions. The weight their recommendations carry is unclear. For example, when Spencer was escorted off the Anderson job site, he testified that Ma-chen, a foreman, and Vidrine, a general foreman, were the employees who escorted him off the site, and that no other Schmidt managers were informed or involved. It is also unclear whether foremen have the authority to transfer employees to assignments with different responsibilities, which may make them supervisors under Vance. See Vance, 133 S.Ct. at 2443.
I would not reach the fact-intensive question of whether Machen is a supervisor, because there are alternative grounds for affirmance. Even under the harassment standards applicable to supervisors, the grant of summary judgment should be affirmed. While there is no question that the harassment of Spencer by Machen rose to the level of a hostile work environment, I would conclude that the district court correctly held that Schmidt was entitled to the Ellerth/Faragher affirmative defense to vicarious liability. See Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).
In order to raise this affirmative defense, the employer must first show it took no adverse employment action against Spencer. See Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 480 (5th Cir.2008). Spencer alleges that he was constructively discharged, which would preclude Schmidt from raising the affirmative defense. See id. In determining whether an employer’s actions constitute a constructive discharge, we ask whether working conditions became “so intolerable that a reasonable person in the employee’s position would have felt compelled to resign.” *453 Pennsylvania State Police v. Suders, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); see Aryain, 534 F.3d at 480. To show constructive discharge, a plaintiff must present “something more” than what is required to establish a hostile work environment claim. Aryain, 534 F.3d at 480. Here, Spencer failed to point to sufficient summary judgment evidence supporting a claim of constructive discharge. The only evidence he pointed to, apart from the same evidence establishing the hostile work environment, was that he was given some menial assignments and made to repeat the same task multiple times. While certainly annoying, this does not rise to the level of intolerable working conditions that would compel a reasonable employee to resign. See Suders, 542 U.S. at 141, 124 S.Ct. 2342; Aryain, 534 F.3d at 480.
Since Spencer was not constructively discharged, Schmidt may assert the Ellerth/Faragher affirmative defense to vicarious liability. Under Ellerth/Faragher, an employer may avoid vicarious liability by showing that: (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. Ellerth, 524 U.S. at 765, 118 S.Ct. 2257; Faragher, 524 U.S. at 807, 118 S.Ct. 2275. I would conclude, as the district court did, that Schmidt met both prongs. With regard to the first prong, Schmidt established that it exercised preventative action by disseminating anti-discrimination policies which prohibited discrimination and harassment and provided multiple avenues for complaints by employees, which Spencer does not argue are inadequate or unreasonable. See Lauderdale v. Texas Dept. of Criminal Justice, 512 F.3d 157, 164 (5th Cir.2007). Further, Schmidt promptly corrected the harassing behavior. Specifically, within two weeks of Spencer opening the text message and informing the union of it, Ben Frank, the head of Schmidt, fired Machen for sending the text and Vidrine for being a general foreman who knew of the text but who did not inform his superintendent. This is sufficient to establish the first prong of the El-lerth/Faragher defense. Under the second prong, Schmidt must establish that Spencer unreasonably failed to take advantage of any preventative or corrective opportunities made available by the employer. Ellerth, 524 U.S. at 765, 118 S.Ct. 2257; Faragher, 524 U.S. at 807, 118 S.Ct. 2275. Here, while Spencer notified the union of the text message, he did not alert anyone at Schmidt, and after receiving a secondhand report from his union steward that Schmidt was not taking action, he did not follow any of the multiple avenues for complaint to Schmidt management. See Lauderdale, 512 F.3d at 164-65. Further, Frank also repeatedly offered Spencer his job back after Schmidt fired Machen and Vidrine, including offering to transfer Spencer to a different worksite if he so desired. In these circumstances, particularly given the prompt and effective corrective action taken by Schmidt, I agree with the district court that Schmidt established both prongs of the Ellerth/Faragher defense and was entitled to summary judgment on Spencer’s hostile work environment claim.

II. Spencer’s Retaliation Claim

I disagree with the majority that summary judgment was correctly granted to Schmidt on Spencer’s claim of retaliation. The anti-retaliation provisions of Title VII are broader than the anti-discrimination provisions. See Burlington Northern & Santa Fe R.R. Co. v. White, 548 U.S. 53, 66-67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). To establish a prima facie case of retaliation, a plaintiff must show that: (1) *454 he participated in an activity protected by Title VII; (2) his employer took materially adverse action against him; and (3) a causal connection exists between the protected activity and the materially adverse action. Aryain, 534 F.3d at 484. A materially adverse action is one that “a reasonable employee would have found ... [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.” Burlington Northern, 548 U.S. at 68, 126 S.Ct. 2405 (internal quotation marks omitted). “Trivial harms” do not rise to the level of material adverseness. Id. “An employee’s decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.” Id. “[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.” Id. at 69, 126 S.Ct. 2405.
I agree with the majority that most of Spencer’s allegations fail to rise to the level required to show that a materially adverse action was taken against him, including the allegations that he was cursed at by Vidrine, Machen, and other employees. However, Spencer also alleged that an incident where he was “cornered” and questioned by Machen and Vidrine after he reported the text to the union constituted retaliation. A review of the record indicates that this claim should survive summary judgment. Spencer testified he opened the text message and reported it to a union representative, J.D. Brown, who reported the issue to a Schmidt manager within a day. Spencer testified that subsequently, he was cornered by Machen, the sender of the text, and Vidrine, a general foreman, in an elevator room where he was working. He testified that Machen “proceeded to make a circle around me while David Vidrine engaged me in conversation.” They asked him who he sent the text message to, who else knew about it, and “did I feel like ... I was safe there.” He testified that he did not feel he could leave the room if he wanted to because “one was blocking the entrance and the other one was orbiting my body.” Though he testified that he answered their questions and did not ask to leave, he also testified that he told them he did not feel safe at the job.
On the heels of being sent a text by Machen including explicit racist and threatening imagery, including Ku Klux Klan symbolism, a burning cross and a noose, Spencer was cornered and questioned by the sender and a general foreman about who he had told about the text and whether he felt safe, while one stood in front of the door and one “orbited” him in the room. I would conclude that a reasonable jury could find that this incident could make a “reasonable employee” feel actually threatened for reporting an incident of racial harassment, which could deter a reasonable employee from making or supporting a complaint and thus rises to the level of material adverseness under Burlington Northern. Id. at 67, 126 S.Ct. 2405. Spencer has raised sufficient evidence about whether this action constituted material adverseness to survive summary judgment.
I would also find that the other prongs of the retaliation standard are met, sufficient to survive summary judgment. See Aryain, 534 F.3d at 484. Spencer’s complaint to the union, which he made with the expectation that the union would raise the complaint with Schmidt on his behalf, constituted “opposing] any practice made an unlawful employment practice” and is protected activity. See 42 U.S.C. § 2000e-3; see Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir.1996). Further, Spencer tes *455 tified that after he opened the text on December 20 and alerted the union, who notified Schmidt by at least December 21, Machen and Vidrine cornered him and asked him who he had shown the text message to and who else knew about it. While the record is not clear on which day the confrontation happened, it is clear that it happened between December 21 and December 28. This “very close” temporal proximity between the complaint and the alleged retaliation, see Clark County School District v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), together with Machen and Vidrine’s questioning directly referencing the text and who Spencer had told about the text, are sufficient to raise a fact issue as to whether or not they acted because of the complaint to the union.
The majority concludes that summary judgment is appropriate because the retaliation is not attributable to Schmidt. As the majority recognizes, the district court did not reach this issue, and the parties do not address it on appeal. This question depends on whether Machen and Vidrine “serve[ ] in a supervisory position and ex-ereise[ ] significant control over ... hiring, firing, or conditions of employment.” See Long, 88 F.3d at 306. As I stated above, the question of whether Machen and Vid-rine are supervisors is a fact-intensive issue. The retaliatory incident involved Ma-chen, a foreman, as well as Vidrine, a general foreman. The record reflects that general foremen may supervise the work of other foremen, have input into hiring and firing decisions, and may be able to transfer, discipline or fire employees. Thus, I would also conclude that there are fact issues precluding us from concluding that Vidrine’s and Machen’s alleged retaliation against Spencer is not attributable to Schmidt.
Finally, Schmidt has not indicated that there could be any other motivation for Machen and Vidrine’s intimidation and implicit threatening of Spencer, and it is difficult to imagine any other motivation, other than to frighten him and dissuade him from pursuing further corrective action regarding the alleged discrimination. There are sufficient fact issues surrounding the incident to warrant denial of summary judgment on the issue of retaliation.

III. Conclusion

For the foregoing reasons, I concur in the majority’s decision in part and agree that summary judgment was correctly granted on Bellard’s race discrimination claim and Spencer’s hostile work environment claim. I respectfully dissent with regard to the grant of summary judgment on Spencer’s claim of retaliation, which I would reverse and remand.