# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2011

No. 11-60239
Summary Calendar

Lyle W. Cayce
Clerk

RACHEL K. BISSETT

Plaintiff-Appellant

v.

BEAU RIVAGE RESORTS INCORPORATED,

Defendant-Appellee

Appeal from the United States District Court for the
Southern District of Mississippi
USDC No. 1:10-CV-99

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In this employment discrimination case, Plaintiff-Appellant Rachel Bissett appeals the district court's grant of summary judgment in favor of Defendant-Appellee Beau Rivage Resorts, Inc. ("Beau Rivage") on her Title VII race discrimination, sex discrimination, and retaliation claims. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60239

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Bissett, a Caucasian female, began working at the Beau Rivage casino in 1998. Bissett was the manager of the casino's count room, where she supervised the collection and counting of the casino's money. On July 2, 2007, Bissett submitted a complaint to Beau Rivage's Human Resources ("HR") Department, complaining of a hostile work environment because another employee made sexually demeaning comments about her. A resulting HR investigation found that the other employee was in violation of the casino's polices, but it also found that Bissett contributed to the environment by initiating sexual conversations with co-workers.

In April 2009, Michael Bonayog, a count room supervisor and a subordinate of Bissett, complained to Glenn Ellis—Bissett's supervisor and the casino controller—about Bissett's behavior in the count room. Bonayog told Ellis that Bissett regularly made inappropriate age, sex, and race-related comments to and about other employees. After this conversation, Ellis contacted HR so Bonayog's complaint could be investigated.

On April 17, 2009, Bissett was suspended pending investigation and she was instructed not to contact any co-workers during the investigation. Despite this instruction, Bissett contacted one of her subordinates multiple times and she also contacted another employee at the casino. During the course of HR's investigation, thirteen employees, including Bissett, were interviewed and provided signed statements about Bissett's conduct. Bissett's subordinates provided generally consistent testimony stating that Bissett gave more overtime to Caucasian employees. The employees also stated that Bissett made numerous offensive statements about sex, race, religion, age, and other sensitive topics.

Bissett denies making some of the statements and she also claims that Bonayog conspired with other minority employees to have her terminated because she is Caucasian. Bonayog is an Asian/African-American male. To

2

explain the supposed conspiracy, Bissett states that the atmosphere in the count room became racially charged because of the 2008 presidential election and because of Beau Rivage's diversity policy. Bissett also states that Bonayog became upset with her when she promoted a female employee to a lead position in the count room. Bissett states that Bonayog believed a woman in that position would hinder the counting process.

On May 12, 2009, Rogena Barnes, Vice President of HR, issued a memorandum terminating Bissett's employment. Barnes concluded that the evidence gathered in the investigation showed that Bissett had engaged in race discrimination by giving more overtime to Caucasian employees and that Bissett also had made numerous racist statements about minorities. Further, Barnes concluded that Bissett created a hostile work environment because she criticized employees, ridiculed them for using medical leave, and also made numerous inappropriate sexual comments to and about co-workers. Finally, Barnes found that Bissett interfered with the investigation by contacting co-workers while it was ongoing. Bissett contends that HR's investigation was one-sided and biased by racial animus because of Beau Rivage's diversity policy and because Barnes is African-American. After Bissett's termination, Bonayog was promoted to fill her position as manager of the count room.

After submitting a charge of employment discrimination with the Equal Employment Opportunity Commission, Bissett filed the instant suit, alleging age discrimination, sex discrimination, race discrimination, sexual harassment, retaliatory discharge, and hostile work environment under Title VII, the Age Discrimination in Employment Act, and 42 U.S.C. § 1981. The district court granted the Beau Rivage's motion for summary judgment and dismissed all of Bissett's claims. Bissett now appeals the district court's grant of summary judgment on the Title VII race discrimination, sex discrimination, and retaliation claims, arguing that she raised issues of material fact as to each.

No. 11-60239

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, construing all facts and inferences in the light most favorable to the nonmoving party. *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 786 (5th Cir. 2010). Summary judgment is proper only when the movant demonstrates that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Fed. Ins. Co. v. Ace Prop. & Cas. Co.*, 429 F.3d 120, 122 (5th Cir. 2005); Fed. R. Civ. P. 56(a).

## ANALYSIS

### 1. Title VII Race and Sex Discrimination

Under Title VII, race or sex discrimination can be established either through direct or circumstantial evidence. *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 219 (5th Cir. 2001). Where the plaintiff offers circumstantial evidence—as is the case here—we use the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). To do so, a plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was subjected to treatment less favorable than similarly situated employees outside the protected class or was replaced by someone outside the protected class. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001). Once the plaintiff makes a prima facie case, the burden shifts to the employer to "produce a legitimate, nondiscriminatory reason for her termination." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). If the defendant offers such a reason, the burden shifts back to the plaintiff to show that either (1) the defendant's alleged justification was pretext for discrimination, or (2) that the defendant's reason, although true, is only one of

4

the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

The first two steps of the framework are not at issue because the circumstances of Bissett's discharge establish prima facie cases of both race and sex discrimination and because Beau Rivage has offered its findings of misconduct as its reason for discharging Bissett. Therefore, we limit our analysis to whether Beau Rivage's claimed reason for discharging Bissett was merely pretextual and whether discriminatory animus was a motivating factor in Beau Rivage's decision.[1] Bissett carries the burden of creating an issue of material fact and "unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous., Tex.*, 337 F.3d 539, 541 (5th Cir. 2003).

First, as to her race discrimination claim, Bissett argues that the decision to terminate her was actually due to her race because (1) Beau Rivage's decision incorporated false evidence submitted by minority subordinates who had conspired to have her fired because she is Caucasian; and because (2) Beau Rivage conducted a one-sided investigation so it could terminate her as part of its diversity initiative.

The district court properly rejected both of these arguments, finding no evidence that the decision to terminate Bissett was influenced by racial animus. As to her first argument, Bissett does not offer any evidence to support her claim that subordinates conspired to have her terminated because she is Caucasian. Bissett vaguely describes how the environment in the counting room became racially charged during the 2008 presidential campaign. Beyond this generalized assertion though, Bissett is not able to demonstrate that her

---

[1] Bissett argues both that her discharge was pretextual and that discriminatory animus was a motivating factor in the discharge.

No. 11-60239

subordinate employees disagreed with anything other than her political views or the offensive manner in which she discussed President Obama.[2]  Bissett also claims that the existence of the conspiracy is evidenced by a single statement made by Bonayog to HR, which states "[w]e [subordinates] have all talked and [we] don't feel like Rachel can change.  We're afraid that if she does come back that we will all be targeted."  Rather than establishing the presence of a race-based conspiracy, this statement suggests that the employees thought Bissett would not change her inappropriate behavior and were also worried that she would retaliate against them for reporting her misconduct to HR.

Regarding Bissett's second argument—that HR conducted a one-sided investigation so she could be fired to increase diversity—Bissett again fails to submit any evidence supporting this assertion.  Bissett contends that she was a victim of Beau Rivage's diversity policy, which states that "[Beau Rivage] value[s] diversity and consider[s] it an important and necessary tool that will enable us to maintain a competitive edge," and that "[Beau Rivage] is committed to maintaining a workforce that reflects the diversity of the community."  Bissett offers no evidence to support her contention that she was actually terminated to increase diversity.  Indeed, there is no evidence in the record showing that  HR investigated the complaints against Bissett differently because she is Caucasian or considered her race when deciding to terminate her.  Bissett cannot create an issue of material fact simply by stating her own unsubstantiated belief that the diversity policy led to her discharge.[3]  *See Portis v. First Nat'l Bank of New*

---

[2] Evidence that Bissett's subordinates may have considered Bissett a racist because of the offensive statements that she made about President Obama and African-Americans does not prove that these same employees also possessed racial animus against Bissett.

[3] *See, e.g.*, *Jones v. Bernake*, 493 F. Supp.2d 18, 29 (D.D.C. 2007) ("[T]he mere existence of a diversity policy, without more, is insufficient to make out a prima facie case of reverse discrimination."); *Reed v. Agilent Techs., Inc.*, 174 F. Supp.2d 176, 185–86 (D. Del. 2001) ("Merely producing anecdotal evidence regarding the aspirational purpose of an employer's diversity policy, and its intent to ameliorate any underutilization of certain groups, is not

No. 11-60239

*Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994) ("Generalized testimony by an employee regarding his subjective belief that his discharge was the result of discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge." (internal punctuation omitted) (quoting *Elliott v. Grp. Medical & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983)).[4] Thus, Bissett fails to offer any evidence raising an inference of racial discrimination.

Second, the district court also properly dismissed Bissett's sex discrimination claim. Bissett alleges that Beau Rivage terminated her because of her gender. To support this accusation, Bissett claims that Bonayog, her subordinate, previously remarked that he was unhappy when a female co-worker was promoted by Bissett to a lead position. Bissett claims that Bonayog's sexist statement about this other co-worker shows that he also had discriminatory animus towards her.

---

sufficient . . . Instead, [a plaintiff] must show that such policies were actually relied upon in deciding to terminate his employment." (quotation marks omitted)).

[4] Bissett's claim that HR's investigation of her misconduct was a mere vehicle for its diversity policy centers on the accusation that Barnes fabricated evidence. In particular, Bissett claims that Barnes falsely concluded that Bissett stated "Come on, niggers, let's leave" at the end of a shift to her employees. Bissett denies making the statement and now accuses Barnes of fabricating it because Barnes is an African-American who "let her racial blinders interfere with her interaction with a white subordinate."

The offensive comment attributed to Bissett by Barnes appeared in one of the statements that was submitted to HR during the investigation. Taken in context, it is not clear whether the comment was made by Bissett or not. Whether or not HR incorrectly attributed this statement to Bissett, however, is irrelevant given that there is no evidence that HR's investigation of Bissett's conduct was influenced by any racial animus. Other than assuming an African-American HR employee cannot fairly review evidence submitted to her, Bissett offers no evidence showing that Barnes, or anyone else in HR, acted with racial animus or handled the investigation differently because Bissett is Caucasian. *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (stating that evidence that an employer's investigation came to an incorrect conclusion does not establish racial motivation behind an adverse employment decision).

No. 11-60239

Bissett's sex discrimination claim fails for several reasons. First, there is no evidence suggesting that Bonayog, or anyone else for that matter, possessed gender-related discriminatory animus towards Bissett. *See Dulin v. Board of Comm'rs of Greenwood Leflore Hosp.*, 646 F.3d 232, 237 (5th Cir. 2011) (stating that stray remark must be related to employment decision at issue).

Second, even assuming that Bonayog's statement about a different employee is somehow relevant to Bissett's discharge, this piece of evidence is insufficient to create an issue of material fact under either pretext or mixed motive theories. As to pretext, Bonayog's statement is insufficient to show that Beau Rivage's stated reason for discharging her—discriminatory practices and other gross misconduct—was not the actual reason for her discharge. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003) (per curiam) (stating that stray remarks are probative of discriminatory intent except where they are "the only evidence of pretext"). Indeed, HR's decision to terminate Bissett was based on the generally consistent statements of multiple employees, who stated that Bissett engaged in serious misconduct. *See Evans v. City of Hous.*, 246 F.3d 344, 355 (5th Cir. 2001) (stating that employee's claim cannot survive summary judgment "merely because she disagrees with [her employer's] characterization of her disciplinary history" (citation and internal quotation marks omitted)).

Further, even under a mixed motive analysis, where we assume that Bonayog's discriminatory animus played some role in the adverse employment action, there is no issue of material fact. There is no question that Beau Rivage carried its burden of showing that it still would have terminated Bissett for legitimate reasons given the extensive record of serious misconduct, much of which Bissett does not even deny. *Smith v. Xerox Corp.*, 602 F.3d 320, 327 (5th

No. 11-60239

Cir. 2010); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312–14 (5th Cir. 2004).[5] Accordingly, Bissett has failed to establish a material issue of fact with respect to her claim of sex discrimination.

### 2. Title VII Retaliation

Bissett also argues that her termination in 2009 was in retaliation for her 2007 complaint of sexual harassment. To establish a prima facie case of retaliation, a plaintiff must show: (1) that she participated in an activity protected by Title VII; (2) that her employer took an adverse employment action against her; and (3) a causal connection between the protected activity and the materially adverse action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). If the employer satisfies this burden, the plaintiff then must prove that the employer's reason is pretextual. *Aryain*, 534 F.3d at 484.

The district court correctly found that Bissett does not establish her prima facie case because she did not show a causal link between her 2009 termination and her 2007 complaint of sexual harassment. The two events are separated in time by nearly two years and there is no other evidence suggesting that the

---

[5] Bissett also argues that the district court misapplied the Supreme Court's recent decision in *Staub v. Proctor Hospital*. 131 S. Ct. 1186 (2011). In that decision, the Supreme Court found that the cat's paw doctrine can create liability for an employer where there is no evidence of bias on the part of the final decisionmaker if that decisionmaker took into account a biased negative evaluation by the terminated employee's supervisor. *Id.* at 1192–94. The Supreme Court, however, declined to reach the issue of whether the cat's paw doctrine applies to a discriminatory act committed by a subordinate employee that influenced the decision-maker. *Id.* at 1194 n.5 ("We express no view as to whether the employer would be liable if a co-worker, rather than a supervisor, committed a discriminatory act that influenced the ultimate employment decision."). We need not resolve this open issue because Bissett fails to show the presence of discriminatory animus among any of her subordinates.

events are related. *See Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (finding that lapse of two years is too distant to establish an inference of causation); *Evans*, 246 F.3d at 354 (stating a time lapse of four months can establish causation through temporal proximity when paired with other evidence). Thus, Bissett's claim of retaliation also fails.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.